### FREDERICK V. D. VOORHEES v. WILLIAM CHAFFERS AND OTHERS.

An execution against lands, must be *actually* recorded before it is delivered to the sheriff, or it is of no validity. A mere entry of the title and date of entry in the book of executions, is not a recording within the meaning and object, of the statute. The provision of the statute upon this matter is imperative, and not directory only.

---

This matter was brought up by *certiorari* to the Somerset Common Pleas.

Argued before Justices Ogden and Haines sitting apart, at February term, 1854. The facts fully appear in the opinion of the court, delivered by Justice Haines.

Haines, J. By the return to the writ, and the state of the case agreed upon by the parties, it appears that Frederick V. D. Voorhees, the plaintiff in *certiorari*, recovered a judgment against Samuel B. Van Arsdale, in the Court of Common Pleas of Somerset, on the 24th May, 1852; and that the executors of Cornelius Cruser, deceased, recovered against the same defendant, and on the same day, a judgment in the Circuit Court of the same county; that executions against goods and lands were duly issued upon the judgments, and delivered to the clerk to be recorded; that the clerk, pursuant to a practice said to obtain in his office, entered in the books of executions of those courts, respectively, the titles of the causes, the names

of the writs and of the parties, and the amounts to be levied; and in due form endorsed on the writ, the certificates of record. In the books of executions, blank spaces were left, into which the writs were copied at length, after they had been delivered to the sheriff, and by him executed and returned.

It further appears, that Chaffers and Stout also recovered judgment against the same defendant, in the Court of Common Pleas of Somerset, on the same 24th May, 1852 ; and that Samuel D. Bergen and James Melliker, severally recovered judgments against the same defendant, in the Court of Common Pleas, on the 26th May, 1852. Upon the last three judgments, executions were issued and duly recorded at length, and delivered to the sheriff on the days of the rendition of the judgments, respectively. The sheriff sold the personal and real estate of the defendant, Van Arsdale, and on rule, brought the money into the Court of Common Pleas, and thereupon, on behalf of Frederick V. D. Voorhees, and of the executors of Cruser, application was made for a rule directing the proceeds of the sales of the real estate to he applied to their executions.

That court refused the motion, and directed the money to be applied to the executions of Chaffers and Stout, and of Bergen and Melliker.

The *certiorari* is brought to reverse the order of the Common Pleas, and to have the money applied to the senior executions.

The plaintiffs in the other judgments resist the motion, on the ground that the prior executions were, not recorded before delivery to the sheriff.

That an execution against goods and lands, to be made effectual against real estate, must be recorded before its delivery to the sheriff is not denied; but it is insisted that the entry in the book of executions, of the abstract of the writ, is virtually a record of it; and that the subsequent copying of the writ into the book, completed the record as effectually, and gave it the same force as if it had been so entered at first.

The natural inquiry here is, what is the object of record-ing an execution? If it be merely to give notice to creditors and to others, then, perhaps, the entry first made in the book of process may be regarded as sufficient for that purpose. If that be not the sole object, then we must inquire further as to the effect of such entry.

At the common law, real estate could not be sold for the payment of debts, and a creditor might have had large claims against the owners of land, without the power of collecting his debt. To remedy this mischief, an act was passed by the General Assembly of the Province of New Jersey in 1743, (*Neville's Laws,* 279–80 and 81,) making real estate chargeable with debts and liable to be sold for their satisfaction, and authorizing the issuing of executions commanding the sheriff to make sale of the land for that purpose.

The 8th section of the act, required that one of the judges should inspect the record of the judgment, and the process issued thereon, and that the judgment and process, with the certificate of inspection, should be recorded in a book to be kept for that purpose, before sending the process to the sheriff or other officer.

The reason for thus inspecting and recording is given in the preamble to that section, which recites as follows: "And whereas, by the oversights, neglect, or unskilfulness of the attorney, who draws the judgment, upon which such process as aforesaid do issue, the same judgment may be liable to be reversed by writ of error; in like manner, may the process issued upon such judgment be liable to be reversed for error; and by carelessness of clerks, the same judgment or process may be liable to be embezzled or lost; by reason of any one of which things, the sale made so as aforesaid, might be liable to be avoided, and the fair purchaser thereby exposed not only to the loss of all his purchase money, but the costs of a suit in ejectment against him, for recovering from him the lands so bought by him; which risques, if not some way provided against, will deter men from giving near the real

value for lands exposed to sale as aforesaid, will be a great prejudice to the defendant, whose lands are so exposed, by selling them at an under rate, and may in turn render title to real estate in this province very precarious, if some remedy be not provided."

From the preamble, it appears that the object of recording this writ was not merely to give notice of the execution, but to render more secure the title of the purchaser of real estate under it, and thereby to prevent the sacrifice of the property of defendants.

The section which provided the remedy was not merely directory, but imperative ; and it forbade that any process against real estate should issue, unless the judgment and process were inspected and recorded before sending such process to the sheriff or other officer.

The third section of the act making lands liable to be sold for the payment of debts, (*Rev. Stat.* 660,) under which we now proceed, requires every execution against real estate to be recorded before its delivery to the sheriff; and although there is no preamble to this act, it must be regarded as intended to provide for the like mischief, and equally imperative with the former act.

If the record is made to provide against the consequences of the embezzlement or loss of the writ, how could that be accomplished by a mere memorandum of the style of action, the name of the writ and of the parties, and the amount to be raised? How could the purchaser in such case make good his title to the premises sold? The execution is an indispensable link in the chain of his title, which an abstract like that entered in this case, cannot supply. The act says, " the record of such writ so *made* shall be as good evidence as the writ itself." Can it be that such an abstract is contemplated by the words " so made? " If not, then the abstract is not evidence, and if the writ be lost, the purchaser would be exposed to all the hazards mentioned in the provincial act. Titles to real estate, sold at sheriff's sale would be so uncertain, that purchasers at a fair value, would rarely

be found; debtors would often suffer great sacrifices of their property, and creditors frequently fail to make their money

Such seems to have been the views entertained by Mr. Justice Pennington, in *Elmer* v. *Burgin*, 1 *Penn. R.* 192, in which he remarked, "I incline to think that the recording of the execution before delivering to the sheriff, is an essential act to be performed; and without it there is no authority to levy on, or sell the land. It appears to me that the intention of the legislature cannot be carried into effect by any other construction. I look upon the recording of the writ after its return, as nothing."

The only safe course is to pursue the directions, and to obey the command of the statute. And there is no hardship imposed by it. If the creditor would avail himself of a statute which is in derogation of the common law, he has no reason to complain because he is required by it to see that his execution is recorded.

The execution of the plaintiff in *certiorari*, not having been recorded before its delivery to the sheriff, was not a lien upon the real estate; it gave no right to sell it, and no claim to the proceeds of its sale.

The Court of Common Pleas did not err in ordering the money to be applied to the junior executions, which had been duly recorded, and their judgment and order must be affirmed with costs.

OGDEN, J., concurred.